**Joseph E. Piucci** OSB No. 135325
**Stephen V. Piucci** OSB No. 821056
Piucci Law, LLC
900 SW 13th Avenue, Suite 200
Portland, Oregon 97205
Telephone: 503-228-7385
Facsimile: 503-228-2571
E-mail: joe@piucci.com
steve@piucci.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ANGELICA ERIKA CLARK**, Individually,<br><br>Plaintiff,<br><br>v.<br><br>**CITY OF PORTLAND**, a municipal corporation, and **JOHN DOES 1-3**, in their individual capacities,<br><br>Defendants. | Civil Action No. 3:22-cv-<br><br>**COMPLAINT**<br><br>VIOLATION OF CIVIL RIGHTS, 42 U.S.C. §1983; BATTERY, NEGLIGENCE<br><br>**JURY TRIAL DEMANDED** |

<u>**COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

<u>**PRELIMINARY STATEMENT**</u>

**1 – PLAINTIFF'S COMPLAINT**

This is an action brought to vindicate Plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution of the United States pursuant to 42 U.S.C. §1983 and the Oregon Tort Claims Act.

On the night of July 25th, 2020, Plaintiff Angelica Clark participated in a protest against police violence and in support of the Black Lives Matter movement. At approximately 2:15 am on January 26th, 2020, Portland Police Bureau officers repeatedly beat Ms. Clark as she followed orders to disperse. One officer then put his hand on her face, violently ripped off her mask and goggles, and sprayed pepper spray directly into her eyes. Ms. Clark is a Black woman.

No Portland Police Bureau officer has faced any accountability for these actions.

## BACKGROUND AND CONTEXT

*"Each time a [person] stands up for an ideal, or acts to improve the lot of others, or strikes out against injustice, he sends forth a tiny ripple of hope."* – **Robert F. Kennedy**

1.

On May 25th, 2020, a Black man named George Floyd was murdered in Minneapolis, Minnesota, by an officer of the City of Minneapolis Police Department, Derek Chauvin. Chauvin held his knee to Floyd's neck for at least eight minutes and 46 seconds while his fellow police officers stood by and casually watched Floyd die.

2.

Following George Floyd's gruesome public murder, protests erupted nationwide in support of the Black Lives Matter (BLM) movement and against systemic racism, police

2 – PLAINTIFF'S COMPLAINT

brutality and use of excessive force. Across the country, police met these protests with violence, brutality and excessive force.

3.

On May 28, 2020, thousands of people began months of sustained protests in Portland, Oregon in support of Black Lives Matter and against police violence.

4.

Portland Police Bureau ("PPB") officers met these protests with violence and excessive force, indiscriminately attacking the crowd with pepper balls, batons, sonic weapons, and tear gas, in the midst of a global pandemic that attacked respiratory systems. During Black Lives Matter protests between May 29th and November 15th, 2020, Portland Police Bureau officers used force more than 6000 times.[1]

5.

In 2012, the United States Department of Justice ("DOJ") issued findings that the City of Portland's Police Bureau was engaging in a pattern and practice of unconstitutional excessive force against community members and identified deficiencies in the City's use of force policies, practices, training, and officer accountability. As a result, the DOJ filed a lawsuit against the City, alleging this unconstitutional pattern and practice of excessive force. The 2014 Settlement Agreement negotiated by the City and the DOJ included terms related to City's use of force policies, practices, and training, and enhancement of its data collection practices.

6.

From 2012 through the present, the Portland Police Bureau has revised its use of force policies and trainings to emphasize de-escalation, in order to address the allegations of excessive

---

[1] *United States of America v. City of Portland,* 3:12-cv-02265 (D. Or.), EFC 236.

**3 – PLAINTIFF'S COMPLAINT**

use of force articulated in the DOJ lawsuit. In practice, however, the Portland Police Bureau does not effectively discipline officers who fail to de-escalate confrontations and does not effectively discipline officers who use excessive force.

7.

On April 2nd, 2021, the DOJ issued the City a formal notice of noncompliance with the 2014 Settlement Agreement, following its February 10th, 2020 "Fifth Periodic Compliance Report." Regarding the Black Lives Matter Protests, DOJ wrote:

> During these crowd-control events, PPB reports that its officers used force more than 6,000 times. Some of this force deviated from force policy, and supervisors frequently validated individual uses of force with little or no discussion of reasonableness of the force used. [2]

8.

Outside consultants hired by the City to assess its compliance with the 2014 Settlement Agreement likewise found that PPB was unable to maintain substantial compliance with its terms regarding the use of force at Black Lives Matter Protests in 2020. The report concludes, "[a]t times, no distinction was made between persons engaging in serious criminal acts and those who, while unlawfully remaining in an exclusion zone, posed no threat and offered no resistance." [3]

9.

Earlier assessments likewise found the City's use of force at Black Lives Matter protests to be unlawful. On November 27th, 2020, United States District Court Judge Marco Hernandez found the City in contempt of its June 26th, 2020 Stipulated Additional Temporary Restraining Order, which restricted the use of other crowd-control munitions, including FN303s and 40MM

---

[2] *United States of America v. City of Portland,* 3:12-cv-02265 (D. Or.), ECF 236.
[3] Compliance Officer and Community Liaison Quarterly Report, March 12, 2021; https://www.portlandoregon.gov/pccep/article/782536

**4 – PLAINTIFF'S COMPLAINT**

less lethal launchers.[4] This contempt finding was based on the conduct of Portland Police Bureau officers at a June 30th, 2020 Black Lives Matter protest.

## JURISDICTION

10.

This action is brought pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, for violations of constitutional rights held by all persons.

11.

This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343.

12.

This court has supplemental jurisdiction of Plaintiff's pendent state law claims under 28 U.S.C. § 1367.

13.

Venue is proper under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Oregon, and because Defendants are subject to personal jurisdiction in the District of Oregon.

## PARTIES

14.

Plaintiff Angelica Clark was at all relevant times was, a resident of Portland, Oregon.

---

[4] *Don't Shoot Portland v City of Portland*, 3:20-cv-00917 (D. Or.), ECF 204.

5 – PLAINTIFF'S COMPLAINT

15.

Defendants John Doe 1, John Doe 2, and John Doe 3 "Doe Defendants" were police officers with the Portland's Police Bureau, acting in the course and scope of their employment and under color of law at the time of the events alleged herein. The Doe Defendants have concealed their identities and their names and/or they are not yet fully known to plaintiff. Each is sued in his individual capacity.

16.

Defendant City of Portland ("City") was at all times a municipal subdivision of the State of Oregon. The City is a "person" pursuant to 42 U.S.C. § 1983.

**FACTS COMMON TO ALL CLAIMS**

17.

On the evening of July 25th, 2020, protesters gathered in front of the Mark O. Hatfield United States Courthouse to protest against police violence and in support of the Black Lives Matter movement. Plaintiff attended this event and peacefully protested. Prior to midnight, federal agents responded to this protest and Portland Police Bureau officers largely stayed away.

18.

At approximately 1:43 am on July 26th, 2020, Portland Police Bureau officers became involved in clearing the streets of downtown Portland. While federal agents held a line at the intersection of SW 4th Ave. and Salmon St., PPB vehicles, including vans of officers in riot gear, passed behind:

//

//





19.

At approximately 2:15 am, PPB officers formed a line, marching north along SW 4th Avenue SW Taylor St and SW Yamhill St.



At this time, PPB officers directed protesters to disperse via the Long Range Acoustic Device (LRAD). Plaintiff was complying with PPB directives and was dispersing to the north along SW 4th Avenue.

**7 – PLAINTIFF'S COMPLAINT**

20.

Without warning, and despite protesters dispersing per PPB directives, PPB officers began a "bull rush."

21.

A "bull rush" is a police crowd dispersal tactic in which officers, in a line, sprint at a crowd and then push, strike, pepper spray, and otherwise utilize indiscriminate violence against those in their way. The 4th Avenue July 26th, 2020 "bull rush" is depicted below:



22.

When the "bull rush" reached Plaintiff, dispersing to the north on the western sidewalk of 4th Ave., Defendant Doe 1 violently hit plaintiff with his baton and pushed her into the wall.



8 – PLAINTIFF'S COMPLAINT

The previous image depicts Plaintiff, wearing the orange backpack, and Defendant Doe 1, moments after his attack.

23.

As Plaintiff and her friend plead to be left alone, Defendant Doe 1 again pushes plaintiff into the wall. Defendant Doe 2 then hits plaintiff with his outstretched baton:



24.

Immediately thereafter Defendant Doe 3 violently ripped off Plaintiff's mask and goggles, and pepper sprayed her directly in the face. Plaintiff is shown below shortly after the attack:



9 – PLAINTIFF'S COMPLAINT

25.

At the time and place of this group attack, Plaintiff was following PPB orders to disperse. Plaintiff was not involved in any riot, civil commotion, or mob action.

26.

As a result of this attack, Plaintiff suffered serious, permanent and disabling physical, mental, and emotional injuries. Plaintiff has sought and received mental health treatment for trauma related to this incident and continues to suffer from anxiety and PTSD symptoms.

27.

As a result of this attack, Plaintiff has incurred medical expenses and will incur future medical expenses, and has suffered wage loss, all to her economic damages in an amount to be proven at trial.

28.

As a further result of this attack, Plaintiff has suffered severe emotional distress as well as permanent injuries resulting in pain, embarrassment, loss of enjoyment of normal activities and recreation, all to her noneconomic damages in an amount to be proven at trial.

## FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983 - Fourth Amendment Violation – Excessive Force

*Doe Defendants*

29.

Plaintiff realleges all previous paragraphs as if fully set forth herein.

//

//

**10 – PLAINTIFF'S COMPLAINT**

30.

At all times material Plaintiff had a protected liberty interest under the Fourth Amendment not to be subjected to an unreasonable seizure of her person through the application of undue, unnecessary, and excessive force.

31.

In the Doe Defendants' decision making and use and application of force against Plaintiff, each Doe Defendant failed to ascertain or ignored all reasonable and objective facts and his acts and omissions were objectively unreasonable in light of the circumstances confronting him for reasons which, based on information presently known to Plaintiff, include the following:

A. Defendants lacked knowledge of facts sufficient to form an objectively reasonable belief that Plaintiff posed an immediate threat of bodily harm to any person;

B. Defendants lacked knowledge of facts sufficient to form an objectively reasonable belief that Plaintiff had committed or was about to commit a crime;

C. Defendants intentionally used and applied force that was capable of causing Plaintiff serious injury;

D. Defendants intentionally used and applied a quantum of force that was grossly disproportionate to Plaintiff's conduct;

E. Defendants gave no warning of their intention to use force, even though it was reasonably feasible for defendants to do so; and

F. Defendants intentionally escalated the quantum of force applied with no reasonable rationale to do so.

//

//

**11 – PLAINTIFF'S COMPLAINT**

32.

Defendants seized Plaintiff through the application force and such use of force was unreasonable, unnecessary and excessive and violated Plaintiff's rights under the Fourth Amendment.

33.

At all times material the law was clearly established in the Ninth Circuit that Defendants' use of force in the manner and under the circumstances used against Plaintiff was objectively unreasonable and excessive. Any reasonable law enforcement officer would have known that the force Defendants used against plaintiff was excessive and violated Plaintiff's right to be protected from unreasonable seizure of her person under the Fourth Amendment.

34.

As a direct and proximate result of Defendants' violations of Plaintiff's Fourth Amendment Rights, Plaintiff was placed in fear for her life, and has suffered and will suffer physical and mental pain and emotional distress, all to her noneconomic damages in an amount to be proven at trial.

35.

As a further direct and proximate result of Defendants' violations of Plaintiff's Fourth Amendment Rights, Plaintiff has incurred medical expenses and will incur future medical expenses, and has suffered wage loss, all to her economic damages in an amount to be proven at trial.

36.

The Doe Defendants' conduct was malicious, oppressive, and/or in reckless disregard of Plaintiff's Fourth Amendment rights. Plaintiff is entitled to an award of punitive damages against

Defendants to punish and deter them and others from similar deprivations of constitutional rights in the future.

37.

Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover her attorney fees and costs.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – Fourth Amendment Violation - *Monell*

### Unconstitutional Policy, Custom, or Practice

*Defendant City of Portland*

38.

Plaintiff realleges all previous paragraphs as if fully set forth herein.

39.

At all times material Plaintiff had a protected liberty interest under the Fourth Amendment not to be subjected to an unreasonable seizure of her person through the application of undue, unnecessary, and excessive force. The Doe Defendants violated each of these Fourth Amendment Rights.

40.

The City of Portland has a custom, practice, or unofficial policy of the following:

A. Allowing police officers to use excessive force against Black Lives Matter protesters;

B. Allowing police officers to use excessive force against individuals more broadly;

C. Validating the use of force against Black Lives Matter protesters with no discussion of the reasonableness of the force used;

13 – PLAINTIFF'S COMPLAINT

    D.    Failing to properly train officers in the application of force against peaceful protesters;

    E.    Failing to properly train officers in the application of force generally;

    F.    Failing to comply with court orders restricting the use of force against Black Lives Matter Protesters; and

    G.    Failing to effectively discipline police officers who use excessive force.

41.

These customs, practices, or unofficial policies were the moving forces that resulted in the unconstitutional seizure, excessive force, and battery of Plaintiff. As a direct result of these constitutional violations, Plaintiff was placed in fear for her life, and suffered physical injury and mental harms, outrage, betrayal, offense, indignity and insult causing damage in amounts to be proven at trial.

42.

Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover her attorney fees and costs.

### THIRD CLAIM FOR RELIEF

**State Law - Battery**

*Doe Defendants*

43.

Plaintiff realleges all previous paragraphs as if fully set forth herein.

44.

Notice of this claim was properly given to the City of Portland within 180 days of this incident pursuant to ORS 30.275.

14 – PLAINTIFF'S COMPLAINT

45.

Defendants intentionally engaged in harmful or offensive contact with Plaintiff, as alleged in paragraphs 22 through 24.

46.

Defendants were acting within the course and scope of their employment with the City at the time of their batteries of Plaintiff.

47.

As a result of Defendants' batteries, Plaintiff suffered the injuries described above and is entitled to an award of economic and noneconomic damages in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

### State Law – Negligence

*Doe Defendants*

48.

Plaintiff realleges all previous paragraphs as if fully set forth herein.

49.

Notice of this claim was properly given to the City of Portland within 180 days of this incident pursuant to ORS 30.275.

50.

Defendants negligently violated the following Portland Police Bureau Use of Force Directives at the time of their attack of Plaintiff:

    A.    PPB Directive 1010.00 § 5.1, by using force that was objectively unreasonable under the totality of the circumstances;

15 – PLAINTIFF'S COMPLAINT

B.     PPB Directive 1010.00 § 5.1.1, by using force when Plaintiff posed no immediate threat to the safety of officers or others;

C.     PPB Directive 1010.00 § 5.1.3, by using force when Plaintiff was neither actively resisting control nor attempting to evade;

D.     PPB Directive 1010.00 § 3.1, by failing to issue any warning prior to using force against Plaintiff;

E.     PPB Directive 1010.00 § 1.1.1 , by failing to employ any de-escalation techniques to avoid a physical confrontation; and

F.     PPB Directive 0635.10 § 6.6.2, by taking independent action not authorized by a supervisor.

51.

As a foreseeable result of Defendants' negligent failure to follow City of Portland Directives, they attacked and injured Plaintiff as alleged above. Plaintiff is entitled to an award of economic and noneconomic damages in an amount to be determined at trial.

**FIFTH CLAIM FOR RELIEF**

**State Law - Negligence**

*Defendant City of Portland*

52.

Plaintiff realleges all previous paragraphs as if fully set forth herein.

53.

Notice of this claim was properly given to the City of Portland within 180 days of this incident pursuant to ORS 30.275.

**16 – PLAINTIFF'S COMPLAINT**

54.

The City of Portland was negligent in the following particulars:

G. In failing to effectively prohibit police officers from using excessive force against Black Lives Matter protesters;

H. In validating the use of force against Black Lives Matter protesters with no discussion of the reasonableness of the force used;

I. In failing to comply with court orders restricting the use of force against Black Lives Matter Protesters;

J. In failing to enforce its own use of force directives;

K. In failing to effectively train its police officers in the proper use of force sufficiently to enable the officers to comply with the City's use of force directives;

L. In failing to supervise Defendants the night they attacked plaintiff and violated the City's use of force directives as alleged in paragraph 50.

M. In failing to effectively discipline police officers who violate its use of force directives; and

N. In failing to discipline Defendants for any past uses of force, despite knowing that appropriate discipline was likely to make them less of an unreasonable threat to others in the future.

55.

As a foreseeable result of the City's negligence, Defendants attacked and injured Plaintiff as alleged above. Plaintiff is entitled to an award of economic and noneconomic damages in an amount to be determined at trial.

**17 – PLAINTIFF'S COMPLAINT**

WHEREFORE Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For compensatory economic and noneconomic damages in an amount to be determined by a jury and for prejudgment interest on said sums;

2. For punitive damages;

3. For plaintiff's attorney fees pursuant to 42 U.S.C. § 1988;

4. For Plaintiff's costs and such other and further relief as the Court may deem just and equitable; and

5. Plaintiff demands a jury trial for all matters triable of right to a jury.

DATED this 25th day of July 2022.

Respectfully submitted,

_____
Joe Piucci, OSB #135325
Piucci Law
900 SW 13th, Suite 200
Portland, OR 97205
503.228.7385
joe@piucci.com

**18 – PLAINTIFF'S COMPLAINT**